UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KARLA S. ADAMS,

                         Plaintiff,            12-CV-957(MAT)

          v.                                   **DECISION**
                                               **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                         Defendant.

_____

## INTRODUCTION

     Plaintiff Karla S. Adams ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11,12.

## BACKGROUND

     Plaintiff applied for SSI and DIB on May 9, 2009, alleging disability beginning November 1, 2003 due to degenerative discs in her lower back and chronic back pain. T. 140, 143, 156.[1] Her

_____

     [1] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

application was initially denied, and a hearing was requested before an Administrative Law Judge ("ALJ"). T. 65-66. Plaintiff appeared with counsel before ALJ Bruce R. Mazzarella on January 12, 2011. T. 30-64. A written decision was issued on January 27, 2011, finding that Plaintiff was not disabled. T. 16-25.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"),[2] the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since November 1, 2003; (2) she suffered from the severe impairment of chronic back pain aggravated by mild obesity; (3) her impairment did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appendix 1; and Plaintiff retained the residual functional capacity ("RFC") to lift/carry 10 pounds occasionally, sit for an 8-hour workday with normal breaks and meals, and stand/walk on an occasional basis for up to 2 hours of an 8-hour workday, with only occasional stooping, crouching, kneeling, or climbing stairs; (4) Plaintiff was unable to perform her past work as a Certified Nursing Assistant ("CNA"); and (5) jobs existed in the national economy that Plaintiff could perform, resulting in a finding of no disability. T. 18-24.

---

[2] See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 11, 2012. T. 4-6. Plaintiff then filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Dkt.#1.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision is correct, is supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#11-1) 15-24. In Plaintiff's cross-motion, she alleges that the ALJ's decision is erroneous because it is not supported by substantial evidence contained in the record, or is legally deficient and therefore she is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#13) 16-24.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## **DISCUSSION**

## I.   **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section

directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the

merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## II.  <u>Medical Evidence</u>

On May 18, 2001, Plaintiff was treated at St. James Mercy Hospital after injuring her back while lifting a patient at her job as a CNA. T. 208. John Halpenny, M.D., noted tenderness in the mild lumbar area and right buttock. <u>Id.</u> Plaintiff was admitted with acute back strain. T. 209. An x-ray taken on that date was unremarkable. T. 210.

Plaintiff underwent physical therapy sessions from June 15 to July 23, 2001, at Dr. Halpenny's recommendation. T. 212-14.

On December 4, 2001, an MRI of Plaintiff's lumbosacral spine revealed mild disc space narrowing at the L4/5 level, mild generalized annular disc bulge causing slight flattening of the thecal sac, and slight central disc protrusion. T. 222.

Dr. David Kung, a neurosurgeon, treated Plaintiff for complaints of lower back pain from June, 2002, through April, 2003. T. 473-80. An L4-L5 discogram, taken on April 11, 2003, showed that the L4-L5 disc was not the cause of Plaintiff's back pain. T. 476.

A film myelogram and CT myelogram of the lumbar spine dated April 29, 2003, were both unremarkable. T. 475-76.

In September 2003, Plaintiff was examined by John Forrest, M.D., for pain in her back and left leg. T. 273. She reported that she could sit for 15-20 minutes and stand for 5-10 minutes. Id. Examination revealed that Plaintiff was limited in side-to-side motion and hyperextension due to pain, positive straight leg raising in the sitting position on the left and bilaterally, and weakness in the toe extensor on the left. Id. Dr. Forrest opined that Plaintiff's prognosis was guarded, and that she had a marked degree of disability with the ability to do light, sedentary work that allowed her to change positions every 15-20 minutes. T. 275.

Between April 2004 and July 2005 Plaintiff saw Dr. John Halpenny, an orthopedic surgeon. He repeatedly noted that Plaintiff walked slowly or with a limp. T. 247, 249, 251-61. Plaintiff's left leg demonstrated reduced muscle strength, and her lumbar spine exhibited a limited range of motion. Dr. Halpenny assessed chronic lumbar strain syndrome with left sciatica, chronic back pain, and small disc protrusion. Id. In July, 2005, Dr. Halpenny opined that Plaintiff had at least a moderate disability for the past year. T. 247.

MRIs of Plaintiff's lumbar spine, taken in July 2005 and April 2007 revealed stable minimal posterior annular bulging, barely impinging upon the dural sac, at the L4-L5 level; moderate facet

arthropathy at L4-L5 and L5-S1 levels; and no spinal canal or neural foraminal stenosis. T. 229, 237.

Plaintiff was examined by Dr. Peter Remac at the request of the State Worker's Compensation Board on September 28, 2005. T. 269-72. Dr. Remac observed diffuse tenderness throughout the midline from the mid-lumbar spine to the sacral level. T. 271. Forward flexion was limited due to pain. Plaintiff's reflexes and sensations were normal in the lower extremities, with the exception of limited sensation in the first and second toes of the left foot. She had full range of motion throughout the hips and knees. Dr. Remec assessed chronic lower back pain with radiation of pain to the left leg. For purposes of worker's compensation, the doctor assessed a partial, temporary disability of a moderate degree. Id. He opined that Plaintiff could lift 10 pounds frequently and 25 pounds occasionally as well as perform work activities that did not involve repetitive bending or lifting. T. 272.

Plaintiff returned to Dr. Halpenny for follow-up examinations from September 2006 to October 2007. T, 239-43. In September 2006, Plaintiff reported that she was functioning "okay" with Vicodin, Skelaxin, and Daprosyn. T. 243. Dr. Halpenny noted that her prescription for Vicodin had been cancelled as "somebody ran a blood test a few weeks ago to see if she had any Hydrocodone in her system and they couldn't find any. They thought this was rather odd as she was supposed to be taking Vicodin and or Percocet." T. 243.

Dr. Halpenny also noted during a previous visit that "the office downstairs apparently did not think that she was taking her medications therefore stopped providing them for her." T. 242.

In October 2007, Plaintiff saw Dr. Halpenny upon complaints of left hip and left knee pain. T. 240. She told the doctor that she could perform light housework, such as standing and doing dishes for 15 minutes, walk for 10 minutes at a time, fold laundry, carry light objects, dress herself, and make beds. Id. Dr. Halpenny observed that straight leg raising, stressing the left sacroilliac joint, and/or range of motion exercises caused pain in the left buttock area. Id. Plaintiff's left knee exhibited no swelling, good range of motion, and some tenderness about the patella. Id. Halpenny assessed chronic lumbar strain, aggravation of lumbar disc disease with radiculopathy, trochanteric bursitis, left side, and possible left knee derangement. T. 241.

Occupational therapist Douglas Seyfried conducted a functional capacity evaluation on October 10, 2006, during which he observed inconsistencies in Plaintiff's force application graphs and self-administered questionnaire results, poor congruency between her pain levels and functions, and elevated coefficients of variation. T. 282. Mr. Seyfried opined that Plaintiff presented a less than reliable and valid effort during testing. Id.

Plaintiff was consultatively examined by Dr. Look Persaud on May 19, 2009. T. 419. Dr. Persaud assessed no limitations in

sitting, standing, walking on even surfaces, reaching overhead, reaching in all planes, and fine motor activity of the hands. Id. Plaintiff had moderate restrictions in bending, twisting, and turning; walking on uneven surfaces and up inclines, ramps, and stairs; and had moderate-to-marked restrictions in lifting, carrying, pushing, and/or pulling. Id. Upon examination, Dr. Persaud noted that Plaintiff walked with a slight limp on the left and needed no assistive device. Results of the physical examination were unremarkable with the exception of limited range of motion on lumbar spine, and positive straight leg raise on the left. Her muscle strength, sensations, and reflexes were normal except for reduced muscle strength and limited range of motion in her left hip and left knee. T. 418-19. Plaintiff told the doctor that she bathed, showered, and dressed herself, made simple meals, cleaned her house, took care of her son, and watched television. She did not do laundry or grocery shop. T. 416-17. Diagnosis was low back pain with left lumbar radiculopathy and intermittent right lumbar radiculopathy. T. 419.

Plaintiff was examined by Dr. Robert Whelpley, on February 5, 2010, for complaints of lower back pain that radiated down the left leg. T. 462. She reported that she was doing fair during the day and sometimes had to lie down. Id. Plaintiff stated that her temporary job had ended and she was seeking employment, Id. After

examination, Dr. Whelpley opined that Plaintiff could return to work if retrained. Id.

In September 2010, Plaintiff returned to Dr. Halpenny, whom she told that she was able to do some housework, could lift a jug of milk, walk a half-mile, drive a car, make meals and make beds. T. 482. At that time she was involved in a vocational retraining program. Id. Upon examination, Dr. Halpenny observed that Plaintiff walked well with no limp, exhibited a limited range of motion in hre lumbar spine, had positive straight leg raise test, and demonstrated reduced muscle strength in her bilateral hips and legs. Id. The doctor assessed chronic lumbar strain, lumbago, and disc bulge. For purposes of worker's compensation, he opined that Plaintiff had a permanent, moderate disability. Id.

Dr. Charles Reina, an orthopedic surgeon, conducted an independent medical examination on January 11, 2011. T. 483-87. Plaintiff told Dr. Reina that she was studying to become a pharmacy technician. T. 484. During examination, Dr. Reina observed that Plaintiff's gait was normal; she exhibited tenderness over her lumbosacral junction, left paraspinal muscles, and left greater trochanter; and had limited range of motion in her lumbar spine. T. 485. The doctor assessed chronic lower back pain with left leg suspected S1 and L5 motor radiculopathy; no definitive reflex with sensory radiculopathy. Id. For purposes of worker's compensation, he opined that Plaintiff had a permanent, moderate-to-marked

partial disability, and that Plaintiff could perform sedentary to light duty work with no pushing, pulling, carrying, or lifting of more than 15-20 pounds. T. 486. Further, Plaintiff required a job that permitted her to alternate between sitting and standing every 30 minutes, with no unprotected climbing or inclines, no bending or reaching below mid-thigh level, no overhead reaching, and no restraining. Id.

### III. **Non-Medical Evidence**

Plaintiff is a high-school graduate who was 30 years old on the alleged onset date of disability. T. 140, 162. From 1999 to November 1, 2003, she worked as a CNA. T. 158, 176-77.

As part of her disability application, Plaintiff completed a function report, in which she stated that she washed dishes, grocery shopped, searched for jobs, took care of her school-age son, and prepared meals with the help of her husband. Plaintiff indicated that she did not drive, that her husband helped her in and out of the bathtub, and helped her to put her shoes on and get dressed. T. 165-72.

Plaintiff testified at her hearing that she worked part-time at a motel for 8 hours per day, 2 days per week from September, 2009 through January, 2010. She received worker's compensation for her permanent, partial disability, and was taking online courses to become a pharmacy technician. T. 39-40.

Plaintiff alleged disability due to back pain caused by an on-the-job injury in 2001. The pain radiated to her left leg and required her to constantly shift positions from sitting to standing to lying down. T. 43-44. She testified that during the course of a typical day, she did school work for about two hours, did some housework (vacuuming, washing dishes, laundry), prepared simple meals, occasionally grocery shopped, and drove herself to medical appointments. T. 51-52. Plaintiff told the ALJ should could lift 10 pounds, sit for 30 minutes at a time, stand for 30 minutes continuously, and needed to lie down for 30-45 minutes every 90 minutes. T. 52-53.

The ALJ also heard testimony from Vocational Expert ("VE") James Phillips. T. 56-61. The ALJ asked the VE to assume an individual of Plaintiff's age, educational background, and work history who could sit for 30 minutes at a time, stand for 25-30 minutes at a time, would need to lie down after alternating sitting and standing for 90 minutes, and who could walk up to 30 feet and lift up to 10 pounds. The VE responded that such a person would not be able to sustain full-time employment.

The ALJ then posed a second hypothetical to the VE involving an individual that could sit throughout an 8 hour workday with normal breaks, occasionally stand and walk for 2 hours, occasionally lift and carry 10 pounds, and occasionally stoop, crouch, kneel, or climb stairs. T. 61. The VE testified that such

an individual could perform the full range of sedentary work. Id.

## IV. **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

### A. **Treating Source Opinion**

Plaintiff first contends that the ALJ failed to indicate what weight was given to the medical opinions of Dr. Reina and Dr. Forrest. Pl. Mem. 18-21. The Commissioner does not dispute that the ALJ did not address the opinions in his written decision. Comm'r Reply Mem. (Dkt.#15) 3-4.

It is true that an ALJ is required to evaluate and weigh the medical findings of non-treating physicians. See 20 C .F.R. § 416.927(c)("we will evaluate every medical opinion we receive....");  20 C.F.R.  416.927(e)(2)(ii)("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant ..., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." (emphasis added)). However, given the context in which these physicians rendered their opinions, the ALJ did not err in failing to mention the two opinions complained of here.

First, neither Dr. Reina nor Dr. Forrest was a treating physician. As such, those opinions were not entitled to any special weight. See 20 C.F.R. § 404.1527(c)(2). Second, both opinions were

rendered in the worker's compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.")); accord, Crowe v. Comm'r, No. 01-CV-1 579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

Third, even if the opinions of Drs. Reina and Forrest are factored in the analysis, substantial evidence otherwise contained in the record supports the ALJ's determination, including reports from treating providers and a consultative examiner. Dr. Forrest examined Plaintiff in September 2003, during which time she does not allege to have been disabled, T. 157, 273-76, and Dr. Reina's

opinion that Plaintiff could perform sedentary to light-duty work with certain limitations in pushing, pulling, climbing, bending, and reaching, was consistent with the evidence in the record as a whole as well as with the RFC finding. T. 486. These opinions therefore do not change the outcome of the ALJ's determination. See, e.g., Seltzer v. Comm'r, 2007 WL 4561120, at *10 (E.D.N.Y. Dec.18, 2007) (finding harmless error can occur even if ALJ fails to affirmatively develop the record or consider all relevant evidence).

Finally, the Court reminds Plaintiff that an ALJ "is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate it was not considered." Barringer v. Comm'r, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (citation and quotations omitted); see also Brault v. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted") (internal quotations and citation omitted).

Accordingly, this Court finds no reversible error with regard to the ALJ's consideration of Dr. Reina's and Dr. Forrest's opinions.

## B.  Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to consider the required factors when assessing Plaintiff's credibility. Pl. Mem. 21-23.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR 96-7p"), (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Contrary to Plaintiff's assertion, the ALJ underwent a thorough analysis of Plaintiff's credibility, specifically enumerating the factors set forth at SSR 96-7p and 20 C.F.R. §§ 404.1529, 416.929.

In his decision, the ALJ pointed out Plaintiff's conservative course of treatment for pain, the fact that she was not a surgical candidate, and her unwillingness to proceed with an epidural steroid injection. T. 20, 21. He noted her daily activities and online schooling, in which she was receiving grades in the "80 to 100 range." Id. He also discussed the unremarkable diagnostic test results. T. 21. The ALJ observed that one evaluator believed that Plaintiff exaggerated her symptoms, and that her testimony was inconsistent with her statements to physicians. T. 22. Her pain levels were further called into question by the ALJ given the treatment notes indicating that her blood tests had negative results for the medication she was prescribed. T. 23. Finally, the ALJ noted that Plaintiff's work history was "relatively weak." Id. It is apparent that the ALJ considered the appropriate factors and applied the correct legal standards. His credibility determination is, therefore, supported by substantial evidence.

C. **VE Testimony**

Plaintiff also argues that the ALJ erred in relying on the VE's testimony because it was based on an incomplete hypothetical. Pl. Mem. 23-24.

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments....") (internal citations and quotation marks omitted). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. Melligan v. Chater, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996).

At the fourth step of the sequential evaluation, the ALJ found that Plaintiff's RFC precluded her from performing her past relevant work as a CNA. T. 23-24.

In determining Plaintiff's RFC, the ALJ relied on evidence from Drs. Persaud, Remac, Halpenny, and Whelpley, the diagnostic tests, together with Plaintiff's statements regarding her symptoms.

Dr. Persaud, the consultative examiner, observed that Plaintiff had a "slight limp" and her stance was normal. She had no

difficulty changing for the examination, getting on and off the examination table, and rising from a seated position. T. 417. She had full muscle strength and full range of motion with normal sensations and reflexes throughout her arms and legs, with reduced muscle strength and limited range of motion in her left hip and knee. T. 418-19. Hand and finger dexterity was in tact, and she demonstrated full grip strength, bilaterally. Id. Based on these findings, Dr. Persaud assessed only a moderate restriction in bending, twisting, and turning, and walking un uneven surfaces, up inclines, ramps, and stairs. T. 419. A consultative examiner's opinion may serve as substantial evidence. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Likewise, Drs. Remac, Reina, and Whelpley assessed limitations consistent with the ability to perform sedentary work. Dr. Remac (independent medical examiner) and Dr. Reina (treating orthopedic surgeon) both opined that Plaintiff could lift 10 pounds frequently and 25 pounds occasionally and could perform activities that did not involve repetitive bending or lifting. T. 272, 486. Dr. Whelpley, Plaintiff's treating physician, stated that Plaintiff could return to work with retraining. T. 462. Plaintiff herself testified that she could lift at least 10 pounds, T. 54, and told Dr. Halpenny that she could walk a half-mile at a time. T. 482.

The ALJ also considered Plaintiff's daily activities. Consistent with sedentary capability, Plaintiff testified that she

spent two hours per day completing an online pharmacy technician course, did housework, and took care of most of her own personal needs. T. 23.

Finally, as the ALJ pointed out, the opinions of Drs. Halpenny and Remac that Plaintiff had a  a "partial disability of a moderate degree" is probative of Plaintiff's RFC. <u>See</u> <u>Stephens v. Heckler</u>, 766 F.2d 284, 285 (7th Cir. 1985) (finding that a person with a partial disability is not disabled under the Social Security Act). T. 23.

In summary, the ALJ correctly assessed Plaintiff's RFC in this case. Because the hypothetical questions were based upon an RFC that realistically and accurately described Plaintiff's limitations, the VE's testimony provided substantial evidence to support the finding of no disability.

### <u>CONCLUSION</u>

For the foregoing reasons the Commissioner's motion for judgment on the pleadings (Dkt.#11) is granted, and Plaintiff's cross-motion for judgment on the pleadings (Dkt.#12) is denied. The complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                              MICHAEL A. TELESCA
                         United States District Judge

Dated:     Rochester, New York
           November 3, 2014